UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROSALINO ANDON, on behalf of himself and all others similarly situated,

                      Plaintiff,

-against-

SDG PROPERTIES, INC. and NOEY MATOS,

                      Defendants.
-------------------------------------------------------------------X

**Docket No.**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**Collective Action and Class Action Complaint**

Plaintiff Rosalino Andon ("Plaintiff"), by and through his attorneys, Joseph & Norinsberg, LLC, alleges on behalf of himself and all others similarly situated, as follows:

## NATURE OF CASE

1. Plaintiff brings this action on behalf of himself and on behalf of similarly situated Plaintiffs for Defendants' systemic and continuous violations of: (i) the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); (ii) the New York Labor Law ("NYLL"); (iii) the spread of hours requirement as contained in the NYCRR; (iv) the requirement that employers furnish employees with an accurate wage notice at the time of hiring, and on an annual basis, containing specific categories of information under the NYLL § 195, codified as the New York Wage Theft Prevention Act (the "NYWTPA"); and (v) any other cause(s) of action that can be inferred from the facts set forth herein.

2. Plaintiff was a building superintendent and handyman who worked for Defendants from 2003 to August 8, 2017. Throughout the course of his employment, Plaintiff regularly worked as many as six days a week, and well over 40 hours each week -- including the requirement that he be on-call 24 hours a day, seven days a week to deal with any issues that arose in the building -- without receiving minimum wages and/or overtime pay as required by law.

1

3. Upon information and belief, Defendants operate as an enterprise, owning and managing 35 residential apartment buildings throughout the City of New York, willfully failing to pay the superintendents, handymen, and porters whom they employ their overtime wages as required by law, and deliberately engaging in the creation of new corporate entities and other methods of intentional dissembling in order to conceal Defendants' unlawful pay practices.

4. Plaintiff performed several roles during the time of his employment. For instance, Plaintiff was acting as superintendent, but also as handyman and renovator. By blurring the line between the various occupations, and whenever possible requiring Plaintiff to perform services that Defendants mischaracterized as "independent contractor" services, Defendants have saved themselves tens of thousands of dollars at the expense of the Plaintiff and others who are similarly situated. Indeed, "handymen services" – i.e., construction, erection, alteration, repair, demolition, plumbing, electrical work, painting, fumigation, lead abatement, or other similar work – when not paired with the title "superintendent," are extremely costly.

5. Through their practice of mischaracterizing employees as "independent contractors," for a portion of their work hours, Defendants have repeatedly and flagrantly violated federal and state laws.

6. Plaintiff brings this action on behalf of himself and all others similarly situated current and former employees pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated of their lawful wages. Plaintiff also brings this action on behalf of himself and a class of similarly situated current and former employees of Defendants,

pursuant to Fed. R. Civ. P. 23, for violations of New York Labor Law ("NYLL") § 195 and 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 146-2.2 and 2.3.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

8. The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) (2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants reside within this judicial district.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## DEMAND FOR A JURY TRIAL

11. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

12. Plaintiff Rosalino Adnon is an individual who, at all times relevant to this Complaint, has been a resident of the City and State of New York.

13. Plaintiff was, between 2003 and August 8, 2017, employed by Defendants as a building superintendent and handyman.

14. At all times relevant to this Complaint, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 USC § 203(e), and NYLL § 190(2).

15. At all times relevant to this action, Defendant SDG Properties, Inc. was and is a domestic business corporation, with its principal place of business located at 888 Seventh Ave., FL 24, New York, New York.

16. At all times relevant to this action, Defendant SDG Properties, Inc. was and is engaged in interstate commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects Defendant SDG Properties, Inc. to the FLSA's overtime requirements.

17. Upon information and belief, Defendants own and operate 35 residential buildings in the City of New York, including buildings at which the named Plaintiff worked.

18. At all times hereinafter mentioned, Defendant Noey Matos ("Matos") was and is property manager, supervisor, and/or managing agent of SDG Properties, Inc. ("SDG"). At all relevant times herein, Matos actively participated in the day-to-day operations of the Defendant company, and was an "employer" pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is, therefore, jointly and severally liable with the corporate Defendant listed herein.

19. At all times hereinafter mentioned, Defendant Matos exercised control over the terms and conditions of Plaintiff's employment, in that he had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiff herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

4

20. Upon information and belief, at all relevant times, Defendant SDG employed Plaintiff and had the power to hire and fire him, supervised and controlled his work schedule and the conditions of his employment, determined the rate and method of his payment, and maintained his employment records.

21. Upon information and belief, the named Defendants were the "employer" of the Plaintiff within the meaning of the FLSA, 29 USC § 203(d), and NYLL § 190(3).

## COLLECTIVE ACTION ALLEGATIONS

22. Plaintiff brings his FLSA claims on behalf of himself and all similarly situated persons who work or have worked for Defendants as building superintendents, handymen, or porters, at any point over the three years preceding the filing date of this Complaint, and who did not receive minimum wages and/or overtime pay for all hours worked more than forty in the work week ("FLSA Collective Action").

23. Defendants are liable under the FLSA for, *inter alia*, failing to pay overtime premiums at one-and-one-half times the regular rate of pay. There are numerous similarly situated current and former employees of Defendants who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

24. The persons in the FLSA Collective Action identified above, including both current and former employees over the relevant period, is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief there are at least 40 FLSA members, and there could be significantly more.

25. The precise number of FLSA Class Members should be readily available from a review of the Defendants' personnel, scheduling, time and payroll records, and from input

5

received from the collective Class Members as part of the notice and "opt-in" process provided by 29 U.S.C § 216(b).

## CLASS ACTION ALLEGATIONS

26. Plaintiff sues on his own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), defined to include: All superintendents, handymen, and porters employed by Defendants, who worked in excess of 40 hours per week, and who were denied overtime wages at the statutory rate of one-and-a-half times the standard pay rate, in violation of the FLSA and the NYLL ("New York Class Action").

27. *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable. Plaintiff reasonably estimates there are at least 40 Class Members who reside and work in New York. The precise number of Class Members should be readily available from a review of Defendants' personnel and payroll records.

28. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Class Members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendants employed and/or jointly employed Plaintiff and other similarly situated persons under New York law;

    b. Whether Defendants violated the NYLL through its pay practices;

    c. Whether Defendants attempted to circumvent state law by misclassifying Plaintiff and other similarly situated persons as "independent contractors" for a portion of their work hours;

    d. Whether Defendants failed to pay Plaintiff and other similarly situated persons for an extra hour's work when their workdays lasted more than 10 hours;

    e. Whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL;

      f. Whether Defendants violated the NYWTPA by failing to establish, maintain and preserve true and accurate payroll records; and

      g. Whether Defendants' violations were willful.

29. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, and course of conduct as all other Rule 23 Class Members' claims and Plaintiff's legal theories are based on the same legal theories as all other Rule 23 Class Members, as detailed above. Moreover, Defendants deliberately conflated the duties of the superintendents, handymen, and porters, or mischaracterized Class Member services as "independent contractor" services, to hide their unlawful practices and to evade the reach of the courts. Notably, Plaintiff held two jobs simultaneously, one as superintendent and one as handyman, and for some of his work, he was considered an "independent contractor."

30. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 York Class. Furthermore, Plaintiff has retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions.

31. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, *inter alia*, it is economically unfeasible for the Rule 23 Class Members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

32. The case will be manageable as a class action because Defendants should have payroll systems that will allow the wage-and-hour facts and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

33. Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

## CLASSWIDE FACTUAL ALLEGATIONS

**The "Independent Contractor" Scheme and Failure to Pay Overtime Compensation**

34. Plaintiff brings FLSA and NYLL claims on behalf of himself and all similarly situated persons employed by Defendants.

35. As building superintendents, handymen, and/or porters, the job duties of the Plaintiff and those similarly situated ("Class Members") included, *inter alia*: a) collecting and taking out garbage on a daily basis, b) making minor apartment repairs and renovations including painting, flooring, and roofing, c) fumigating the apartments, d) electrical work, e) maintaining building boilers, f) checking hallways for cleanliness and maintenance issues, g) tiling, h) plumbing and steam repair, i) blacksmithing, j) carpentry work, k) cleaning inside and outside the buildings, and l) addressing tenants' concerns.

36. Although the building superintendents, handymen, and porters are "employees" as a matter of law, Defendants have misclassified them as "independent contractors" for a portion of their work hours to circumvent state and federal overtime laws.

37. A review of the factors which courts typically use to determine whether an employment relationship exists, demonstrates conclusively that the Plaintiff and Class Members were "employees" for *all* of their work hours.

38. There are many indicia of Defendants' control. Notably, at all relevant times, Defendants had the right to control, and did in fact control, the hours, hourly pay, assignments and schedules of the named Plaintiff and all superintendents, handymen and/or porters working at the buildings they own and/or manage.

39. Likewise, all the work that Plaintiff and Class Members performed was assigned by Defendants and/or Defendants were aware of all the work performed by Plaintiff and Class members.

40. In sum, based on the terms and conditions of Plaintiff's and the Class Member's employment, it is evident that Defendants intentionally misclassified the Plaintiff, FLSA Class, and New York Class as "independent Contractors" for a portion of their work hours, rather than "employees," to avoid paying lawful wages.

41. Indeed, although the Plaintiff and Class Members were required to work more than 40 hours a week, Defendants systematically failed to pay Class Members overtime wages at a rate of one-and-one-half times their regular rate of pay for hours worked in excess of 40 per work week.

42. At all relevant times, Defendants failed to keep complete and/or accurate records of the hours worked by and wages paid to the named Plaintiff.

43. At all relevant times, Defendants failed to post and/or keep posted a notice explaining employees' rights under the FLSA, in violation of 29 C.F.R. § 516.4.

44. Upon information and belief, Defendants' unlawful conduct as described herein is pursuant to a policy or practice of attempting to minimize labor costs by violating the FLSA and NYLL.

45. Defendants' unlawful conduct has been widespread, repeated, consistent, and willful.

**Unlawful Deductions**

46. Plaintiff was routinely required to use his own funds for the benefit of the Defendants, in express violation of NYLL § 193.

47. Notably, Plaintiff was routinely forced to use his own funds to bring on additional workers to help with side jobs – i.e., more sophisticated construction, renovation, painting and installation jobs, above and beyond his duties as a superintended (hereinafter "side jobs") – which he was required to do during his regular work hours.

48. For example, Plaintiff paid his porter, Thomas Gutierez, $150 cash per week from his own funds to take over certain "side jobs" that Defendants required Plaintiff to perform. Defendants were well aware of this arrangement and would themselves give tasks directly to Gutierez with the expectation that Plaintiff would pay him. Defendants never reimbursed Plaintiff for these expenses. This practice continues with Plaintiff's replacement.

49. Defendants supplied some required materials for the completion of side jobs. However, Plaintiff routinely paid for materials himself, including without limitation, plumbing materials, ceramic tiles, and wood. Defendants never reimbursed Plaintiff for these expenses.

50. Such employee-paid expenses were not authorized by Plaintiff or the class, and were not made for the benefit of the employee within the meaning of NYLL § 193.

51. As a result of Defendants' failure to reimburse its employee for such expenses, the employee was deprived of his right to be free of expenditures required as a condition of employment, as guaranteed to him by the NYLL.

### INDIVIDUAL FACTUAL ALLEGATIONS

52. Plaintiff Rosalino Andon worked for Defendants from 2002 until about August 8, 2017.

53. From 2002, Plaintiff Rosalino Andon was employed as a residential superintendent and handyman for SDG Properties, Inc. at a residential building located at 602 West 137th, New

York, NY, and at an additional building at 601 W. 141st, New York, NY, which was located approximately four blocks away. Both buildings were owned and operated by Defendants.

54. Plaintiff Rosalino Andon lived in the building at 602 West 137th, New York, NY rent-free from the start of his employment until January 31, 2017, when he was forced to move to an inferior basement apartment in the building at 565 West 144th Street, New York, NY, where he resided and worked as of February 1, 2017. His duties and hours at 565 West 144th Street stayed largely the same.

55. On or about August 8, 2017, Property Manager Noey Matos informed Plaintiff Rosalino Andon that his employment was terminated.

56. During his employment with Defendants as both a handyman and superintendent, Plaintiff Rosalino Andon routinely worked in excess of 40 hours per week, working on average six days a week. Although Plaintiff was not officially required to work Saturdays, he nevertheless ended up working approximately three Saturdays per month, for 7-8 hours each Saturday.

57. In addition to his hours actively working, Plaintiff Rosalino Andon was required to be on-call to deal with any situation or need that arose in the two buildings 24 hours a day, 7 days a week. Hours for dealing with emergencies varied between 3 to 4 hours a week. Furthermore, Plaintiff was frequently expected to work on "side jobs" that Defendants routinely mischaracterized as "independent contractor" services. In total, Plaintiff worked approximately 65-70 hours a week.

*Defendants' "Independent Contractor" Scheme*

58. As set forth above, Defendants devised an "independent contractor" scheme pursuant to which Defendants required Plaintiff and all similarly situated persons to form a sham corporation, or face termination.

59. The name of Plaintiff's designated corporation was "RELK" and later "KERL."

60. In compliance with Defendants' mandatory procedures, Plaintiff would do side jobs for the Defendants and their associated entities as an "independent contractor" for RELK/ KERL, rather than as an "employee" of the Defendants.

61. Plaintiff was then required to send "invoices" to Defendant SDG Properties, Inc. and their associated entities in order to receive compensation for these side jobs.

62. On the "invoices" – based on Defendants' explicit directions – Plaintiff would only include a description of the work completed (i.e., painting, tiling, renovating etc.). Plaintiff was *not permitted* to name a price for the services rendered on the invoice, or to list the exact number of hours he worked.

63. Instead, Defendant SDG Properties, Inc. and their associated entities would pay Plaintiff whatever price appealed to them for the services he rendered, per their directions, as an "independent contractor."

64. In no way could Plaintiff have been properly classified as an "independent contractor" for the work he completed through RELK/ KERL because Defendants controlled all material aspects of his so-called "side business," including without limitation, the nature of the services provided, the amount charged for those services, and the content of the "invoices" through which Defendants were billed.

65. Plaintiff estimates that he was only paid 50% of the value of jobs. For example, if the industry standard for a given job was $1,000.00, Plaintiff would have been paid $500.00.

66. Significantly, while Plaintiff received W-2s for his official payroll hours at the end of the year, Defendants never gave him 1099s for his "independent contractor" work, further

confirming that this was a sham, designed to deny Plaintiff and similarly situated persons, their lawful overtime wages.

67. In willful disregard of the FLSA, the NYLL, and the NYCRR, Defendants failed to pay Plaintiff Rosalino Andon overtime premiums at one-and-one-half times the regular rate of pay.

68. Additionally, in violation of the NYWTPA, Defendants failed to maintain true and accurate payroll records, among other violations.

69. Further, Defendants relied on Plaintiff Rosalino Andon to purchase materials and to pay for extra help when required for any "side jobs." Due to Defendants' failure to reimburse Rosalino Andon for these expenses and failure to pay industry standard compensation for these side jobs, Plaintiff's net earnings were reduced by hundreds of dollars each month.

*Defendants Compel Plaintiff to Move From His Apartment*

70. On or about January 31, 2017, Plaintiff was forced to move out of the apartment located at 602 West 137th, where he had been working as a residential superintendent since 2002, and move into a low-grade apartment located at 565 West 144th Street ("144th").

71. Plaintiff objected to the move because the 144th building was in terrible condition. Plaintiff was told that the building would be renovated, but that never happened.

72. When the tenants heard about the move, they too objected. Eighty percent of the tenants at 137th signed a petition asking for Plaintiff to remain as superintendent, but to no avail.

73. Plaintiff was told that if he refused to move, he would lose his job. Thus, he had no choice but to move his family into the inferior building at 565 West 144th Street, where he resumed his superintendent duties.

74. Six months later, in August 2017, Plaintiff was asked to leave. No reason was given for the termination of his employment.

75. Plaintiff Rosalino Andon has been designated as the class representative for the FLSA Collective Action and the New York Class.

### FIRST CAUSE OF ACTION AGAINST DEFENDANTS
(Unpaid Overtime under the FLSA)

76. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

77. Defendants violated the rights of Plaintiff and Class Members by failing to pay overtime compensation at a rate not less than one-and-one-half times the regular rate of pay for each hour worked in excess of 40 per week, in violation of the FLSA, 29 U.S.C. § 207(a)(l).

78. Defendants' failure to pay Plaintiff and Class Members overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.

79. In fact, Defendants purposely established an "independent contractor" scheme by which Plaintiff and Class Members were paid by various entities, specifically to avoid paying overtime wages.

80. Defendants are liable to Plaintiff and Class Members for their unpaid overtime compensation, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION AGAINST DEFENDANTS
(Unpaid Overtime under the NYLL and the NYCRR)

81. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

82. NYLL § 160 and 12 NYCRR 142-2.2 require employers to compensate their employees at a rate not less than one-and-one-half times their regular rates of pay for any hours worked in excess of forty per week.

83. Plaintiff and Class Members were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one and a half (1 ½) times their regular rate of pay.

84. These practices are in violation of the NYLL and NYCRR.

85. These practices were willful and lasted for the duration of all relevant time periods.

86. In fact, Defendants purposely established a scheme by which Plaintiff and Class Members were paid by various entities, specifically to avoid paying overtime wages.

87. By reason of the foregoing, Defendants are liable to Plaintiff and Class Members for their unpaid overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

**THIRD CAUSE OF ACTION AGAINST DEFENDANTS**
**(Violation of New York's Spread-Of-Hours Requirement, 12 N.Y.C.R.R. § 142-2.4)**

88. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

89. Under New York law, an "employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required [by New York's minimum wage law], for any day in which ... the spread of hours exceeds 10 hours." 12 N.Y.C.R.R. § 142-2.4. Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 142-2.18.

90. Plaintiff and Class Members were routinely required to work more than ten (10) hours a day, without being compensated for the legally mandated spread of hours pay.

91. In willful disregard of the N.Y.C.R.R., Defendants failed to compensate Plaintiff and Class Members an additional hour's pay for each day that Plaintiff and Class Members worked a spread of hours that exceeded ten (10) hours or a split shift.

92. These practices were willful and lasted for the duration of the relevant time periods.

93. This practice is in violation of 12 N.Y.C.R.R. § 142-2.4.

94. By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus liquidated damages, costs and attorneys' fees.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Failure to Provide Annual Notices in Violation of the NYLL § 195(1))

95. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

96. Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

97. Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with any kind of annual notice whatsoever, let alone an annual notice meeting the requirements of NYLL § 195(1)(a).

98. NYLL § 198(1)(b) provides that any employee not provided such notice may collect damages of $50 for each work day that the violation occurred or continued to occur, up to a total of $5,000 per employee (together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief).

99. During the course of Plaintiffs and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate annual notices as required by New York law.

100. Based on the foregoing, Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Failure to Provide Wage Statements in Violation of the NYLL § 195(3))

101. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102. Pursuant to NYLL § 195(3), every employer is required to:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

103. Defendants knowingly failed to comply with this provision by failing to provide Plaintiff and Class Members with wage statements meeting the requirements the requirements set forth above.

104. NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief.

17

105. During the course of Plaintiff's and Class Members' employment, Defendants consistently and willfully failed to provide them with adequate wage statements as required by New York law.

106. The paystubs provided to Plaintiff and Class Members were woefully inadequate, and do not, and cannot satisfy the requirements of NYLL § 195(3).

107. Defendants are therefore liable to Plaintiff and Class Members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Unlawful Deductions in Violation of the NYLL § 193 and 12 NYCRR § 195-4.5)

108. Plaintiff, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109. New York Labor Law §193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law or those made for the benefit of the employee which are explicitly authorized in writing by the employee.

110. New York Labor Law §193(2) prohibits employers from making any charge against an employee's wages or requiring an employee to make any payment by separate transaction, unless such payment is a permitted deduction pursuant to New York Labor Law §193(1).

111. In requiring Plaintiffs and the putative Class Members, as employees, to acquire and maintain materials, tools, and equipment for Defendants' benefit, among other things, Defendants have violated New York Labor Law §193 and 12 NYCRR § 195-4.5.

112. Based on the foregoing, Plaintiff and the putative Class Members are entitled to recover the cost of materials and tools of the trade the defendants illegally shifted to Plaintiff and

the putative Class Members, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b. Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

c. Designating Rosalino Andon as the Class Representative;

d. Issuing a judgment declaring that Defendants willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

e. Issuing a judgment declaring that Defendants willfully violated the NYLL;

f. Issuing a judgment declaring that Defendants willfully violated the NYCRR governing the compensation of superintendents;

g. Issuing a judgment declaring that Defendants willfully violated New York "spread of hours" pay required under 12 N.Y.C.R.R. § 142-2.4;

h. Granting judgment in favor of Plaintiff, FLSA Plaintiffs, and the New York Class, and against Defendants, and awarding the amount of unpaid overtime wages calculated at the rate of one-and-one-half (1.5) times Plaintiff's regular rate, multiplied by all hours that Plaintiffs worked in excess of the prescribed number of hours per week;

i. Awarding liquidated damages to Plaintiff, FLSA Plaintiffs, and the New York Class, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Class Members;

j. Awarding all other available compensatory damages to Plaintiff, FLSA Plaintiffs, and the New York Class, including, *inter alia*, all unpaid wages, lost interest owed, and liquidated and double damages by Defendants under the FLSA, NYLL, and NYWPTA;

k. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

l. Awarding pre-judgment and post-judgment interest to Plaintiff on these damages; and

m. Such further relief as this court deems appropriate.

Dated: New York, New York
October 13, 2017

Respectfully submitted,

JOSEPH & NORINSBERG, LLC

By: _____
Chaya M. Gourarie, Esq.
225 Broadway, Suite 2700
New York, New York 10007
Tel: (212) 227-5700
Fax: (212) 406-6890
*Attorneys for Plaintiff*