SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x

| | | |
|---|---|---|
| ROSALINO ANDON, *on behalf of himself and all others similarly situated*, | : : : | |
| Plaintiff | : : | Docket No.17-CV-07876 |
| -against- | : : : | |
| SDG PROPERTIES, INC, SDG MANAGEMENT CORP., 137BROADWAY ASSOCIATES,LLC, 138 BROADWAY ASSOCIATES, LLC, 141 BROADWAY ASSOCIATES, LLC, 144 BROADWAY ASSOCIATES, LLC, 156 BROADWAY ASSOCIATES, LLC, STUART D. GOLDSTEIN, EDWARD M. FOX, and NOEY MATOS, | : : : : : : : : : | |
| Defendants | : | |

-------------------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION**


CLIFTON BUDD & DeMARIA, LLP
Attorneys for Defendants
The Empire State Building
350 Fifth Avenue, 61st Floor
New York, New York 10118
(212) 687-7410

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 2

    1. THE DEFENDANTS ..................................................................................................... 2

    2. ANDON'S AFFIDAVIT ................................................................................................ 2

ARGUMENT ............................................................................................................................. 4

    1. 216(B) STANDARD ..................................................................................................... 4

    2. CONCLUSORY AFFIDAVITS ARE INSUFFICIENT .............................................. 5

    3. ANDON'S AFFIDAVIT IS INSUFFICIENT .............................................................. 7

    4. PLAINTIFF OFFERS NO BASIS FOR THE COURT TO EQUITABLY TOLL THE STATUTE OF LIMITATIONS FOR OPT INS ............................................................................................................. 8

    5. ISSUES WITH THE PROPOSED CLASS NOTICE ................................................ 10

        Plaintiff is not entitled to Email Addresses at this Stage ........................................ 10

        The Notice should Contain No references to Handymen ....................................... 10

        The Notice should be limited to employees employed three years from date of notice ................................................................................................ 11

        Defendants Position on lawsuit should be modified ............................................... 12

        The Notice does not need to be posted at Defendants' Buildings .......................... 12

CONCLUSION ........................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page**

**CASES**

*A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135 (2d Cir. 2011) .......................................... 11

*Ali v. New York City Health and Hospitals Corp.*, No. 11 Civ. 6393, 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013) .............................................................................................. 7

*Alvarado Balderramo v. Taxi Tours Inc.*, 2017 WL 2533508 (S.D.N.Y. June 9, 2017) .................................................................................................................................... 12

*Alves v. Affiliated Home Care of Putnam, Inc.*, 2017 WL 511836 (S.D.N.Y. Feb. 8, 2017) .................................................................................................................................... 16

*Barfield v. New York City Health and Hospitals Corp.*, No. 05 Civ. 6319, 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ............................................................................... 7

*Bittencourt v. Ferrara Bakery & Cafe Inc.,* 310 F.R.D. 106 (S.D.N.Y. 2015) ............................. 16

*Bolarinwa v. Williams*, 593 F.3d 226 (2d Cir. 2010) ..................................................................... 11

*Contrera v. Langer*, 278 F. Supp. 3d 702 (S.D.N.Y. 2017) ................................................... passim

*Estate of Mandarino v. Mandarino*, 699 F.Supp.2d 646 (S.D.N.Y. 2010), aff'd, 408 Fed.Appx. 428 (2d Cir. 2011) ......................................................................................... 11

*Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317 (S.D.N.Y. 2007) ............................... 14

*Flores v. Osaka Health SPA, Inc.*, No. 05 Civ. 962(VM)(KNF), 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ................................................................................................... 6, 7

*Fonseca v. Dircksen & Talleyrand Inc.*, 2014 WL 1487279 (S.D.N.Y. Apr. 11, 2014) .................................................................................................................................... 16

*Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541 (S.D.N.Y. 2015) ............................. 17

*Gomez v. Terri Vegetarian LLC*, 2017 WL 2628880 (S.D.N.Y. June 16, 2017) ......................... 16

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) .................................................. 16

*Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249 (S.D.N.Y.1997) ............................................................ 5

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165  (1989) ......................................................... 13

*Iavorski v. I.N.S.*, 232 F.3d 124 (2d. Cir. 2000) ............................................................................. 10

*Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) ...................... 10, 13

*Levinson v. Primedia Inc.*, No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ................................................................................................................................ 7

*Mark v. Gawker Media LLC*, 2014 WL 5557489 (S.D.N.Y. Nov. 3, 2004) ............................... 12

*Mata v. Foodbridge LLC*, 2015 WL 3457293 (S.D.N.Y. June 1, 2015) ....................................... 8

*Menominee Indian Tribe of Wisconsin v. U.S.*, 136 S. Ct. 750 (2016) ......................................... 11

*Michael v. Bloomberg L.P.,* 2015 WL 1810157 (S.D.N.Y. Apr. 17, 2015) ................................. 17

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir.2010) .............................................................. 4, 5, 13

*Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ...................... 10, 12

*Phillips v. Generations Family Health Ctr.*, 723 F.3d 144 (2d Cir. 2013) ............................. 11, 13

*Qing Gu v. T.C. Chikurin, Inc.*, No. 13 Civ. 2322(SJ)(MDG), 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014) ................................................................................................ 6

*Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386(CM), 2012 WL 1514810 (S.D.N.Y. May 1, 2012) ..................................................................................................... 5

*Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264(KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ................................................................................................ 5, 6

*She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) .................... 15

*Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545 (S.D.N.Y. 2013) ....................... 13, 14

*Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ................................... 13

*Warren v. Garvin*, 219 F.3d 111 (2d Cir.), cert. denied, 531 U.S. 968, 121 S.Ct. 404, 148 L.Ed.2d 312 (2000) ............................................................................................. 10

*Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397 (S.D.N.Y. 2012) ............................................... 15

*Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74 (2d Cir. 2003) ........................................ 11

**STATUTES**

29 U.S.C. § 216(b) ......................................................................................................................... 4

## PRELIMINARY STATEMENT

Defendants submit this memorandum of law in opposition to Rosalino Andon's motion for conditional certification of a class of superintendents and handymen. Based only upon the thinnest affidavit, Andon asks this Court to certify a class and to approve class notices. The proposed class is so vaguely defined that it necessarily encompasses persons with whom Andon cannot show he is similarly situated. The Court should decline to do so and deny the motion in its entirety.

Andon's is unable to sufficiently demonstrate terms and conditions of employment were fundamentally similar to any proposed opt in. Most notably, Andon fails to sufficiently show a single plaintiff that was similarly situated to him. For this reason, Andon has not, because he cannot, demonstrated he is similarly situated to any employee of any Defendant. Andon seeks to certify a class of "superintendents and handymen" employed by Defendants. This proposed class definition does not differentiate between job titles, duties, locations, and most notably, does not differentiate between supervision. Andon offers no evidence at all to suggest that any *bona fide* building service worker employed by any Defendant (e.g. doormen, porters, handymen, security personnel, superintendents) was compensated in a manner similar to the way Andon was compensated.

Andon's affidavit offers only conclusory assertions of observations and conversations with some coworkers—which the courts have routinely found insufficient for conditional certification under the FLSA. Andon does not specify when and where any of these conversations took place, or even with whom. Andon does not provide any detail concerning these conversations. Therefore, Andon's bare-bones affidavit does not suggest the alleged pay practices concern anyone other than himself. Put bluntly, Andon has no idea, and can provide the court with no

idea, how Defendants pay their various classifications of employees—he only knows how he was paid.

As explained further herein, the Court should therefore deny this motion in its entirety.

### STATEMENT OF FACTS

**1. The Defendants**

SDG Properties, Inc., SDG Management Corp., 137 Broadway Associates, LLC, 138 Broadway Associates, LLC, 141 Broadway Associates, LLC, 144 Broadway Associates, LLC, 156 Broadway Associates, LLC, Stuart D. Goldstein, Edward M. Fox, and Noey Matos. SDG Management Corp. is a property management company. licensed general contractor that services New York City real estate clients. The buildings it provides management services to includes 137 Broadway Associates, LLC, 138 Broadway Associates, LLC, 141 Broadway Associates, LLC, 144 Broadway Associates, LLC, 156 Broadway Associates, LLC. Goldstein and Fox have an ownership interest in Defendants. Noey Matos was Andon's supervisor.

**2. Andon's affidavit**

Andon submit only his affidavit in support of his motion; none of the nine current or former superintendents he identifies as being similarly situated to him provided evidence or affidavits supporting this motion.[1] His affidavit is summarized as follows:

---

[1] Notably, there is no indication that any of the nine current or former superintendents identified in Andon's affidavit, have consented to join this lawsuit as is required under the FLSA. *See* 29 U.S.C. Sec. 216(b)("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").

Andon worked as a superintendent for buildings at 602 West 137th Street and 601 W. 141st Street in New York City from 2003 until January 31, 2017. (Andon. Aff. ¶ 3(a)). From February 1, 207 until August 8, 2017 he worked a s superintendent at 565 W. 144th Street. (Andon Aff. ¶ 3(b)). He also claims that Defendants directed him to create a contracting company and perform certain renovation and construction work through the contracting company. (Andon. Aff. ¶¶ 9-11). He claims that during his employment he worked between 65 and 70 hours per week, but was paid only a straight time wage of either $600 or $800 biweekly, depending on the pay period, as well as sums for the contracting work. (Andon. Aff. ¶¶ 6-8). He was paid as an employee by Defendant 137 Broadway Associates prior to January 31, 2017 and by Defendant 144 Broadway Associates, LLC after that point until the end of his employment. (Andon. Aff. ¶¶ 5-7). Andon's contracting companies were paid by Defendants 137 Broadway Associates, 138 Broadway Associates, 141 Broadway Associates, and 156 Broadway Associates. (Andon. Aff. ¶ 13).

Andon alleges that his contracted renovation work was part of a scheme to avoid paying him overtime, but The New York State Department of Labor differentiates between building maintenance staff and contractor responsible for renovations. 12 NYCRR 143-3.1 ("building service industry" does not include building trades contractors engaged in construction) and 12 NYCRR 143-2.5 (payments for apartment painting or major repairs not considered wages). Thus, Defendants mechanism for compensating him is little more than a reflection of the Labor Law's differentiation between types of work performed at a building.

Andon alleges that he believes that the Defendants owns or operate 35 other residential buildings and have a policy or practice of denying the other superintendents lawful wages. (Andon. Aff. ¶ 16). He does not identify any of the other buildings that he believes are owner or

3

operated by the Defendants. He simply identities a street in New York City. (Andon. Aff. ¶ 18). He alleges that he spoke with some of the superintendents-but no handymen-at these properties but he does not identify which superintendents he spoke with. (Andon. Aff. ¶ 17). He only knows the last name of five of the nine superintendents he identifies. (Andon. Aff. ¶18). He provides no information about the nature of the work they allegedly performed as independent contractors.

Andon's affidavit does not provide any facts from which to conclude that there are superintendents or handymen beyond Andon who share similar allegations about Defendants' alleged overtime pay practices. On these facts, the Court should deny Plaintiffs' motion in its entirety.

## ARGUMENT

### 1. 216(b) Standard

Section 216(b) of the FLSA authorizes employees to maintain collective actions where they are "similarly situated" with respect to the alleged violations of the Fair Labor Standards Act. 29 U.S.C. § 216(b); *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir.2010). Similarly situated employees must "opt in" to an action by filing a "consent in writing to become ... a party." 29 U.S.C. § 216(b).

Certification of a "collective action" is a two-step process in the Second Circuit. *See Myers*, 624 F.3d at 554–55. At the first step (conditional certification), the Court authorizes notice to be sent to potential similarly situated plaintiffs. *Id*. at 555. Plaintiffs bear the burden of making a "modest factual showing" that the named initial plaintiffs and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (quoting *Hoffman v. Sbarro, Inc*., 982 F.Supp. 249, 261 (S.D.N.Y.1997)).

4

At the second step, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. Defendants may then move for decertification if, after additional discovery, the record shows that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiffs. *Id.*

"Certification is not automatic." *Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386(CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012). Plaintiff's burden of proof may seem low, but "it is not non-existent." *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264(KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014). The "modest factual showing" required for conditional certification "cannot be satisfied simply by unsupported assertions." *Myers*, 624 F.3d at 555 (citation omitted). Plaintiff must offer "actual evidence of a factual nexus" between his own experience and the experiences of those he claims as "similarly situated," rather than "mere conclusory allegations." *Qing Gu v. T.C. Chikurin, Inc.*, No. 13 Civ. 2322(SJ)(MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) (*citing Flores v. Osaka Health SPA, Inc.*, No. 05 Civ. 962(VM)(KNF), 2006 WL 695675, at *2 (S.D.N.Y. Mar. 16, 2006)).

**2. Conclusory affidavits are insufficient**

Motions for conditional certification have been denied where the only substantive allegations were nonspecific personal observations and conversations. For instance, in *Sanchez v. JMP Ventures, LLC*, No. 13 Civ. 7264, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014), the Court rejected conditional certification where the plaintiff had made factual allegations about his own underpayment and alleged that those policies were "common practice" at the defendant restaurants based on "observations" and conversations with other employees. The Court denied the motion, noting that because he did not provide "any detail as to a single such observation or

5

conversation, ... the Court is left with a list of generalized allegations that have been molded into a declaration which reads similarly to the complaint." *Id*. (emphasis in the original).

In *Ali v. New York City Health and Hospitals Corp.*, No. 11 Civ. 6393, 2013 WL 1245543, at *3 (S.D.N.Y. Mar. 27, 2013), the Court denied a motion for conditional certification where the "sole basis" for the plaintiff's belief that others were similarly situated was "conversations with other respiratory therapists," without providing additional information about the conversations or their substance. In *Barfield v. New York City Health and Hospitals Corp.*, No. 05 Civ. 6319, 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005), the Court denied conditional certification where a plaintiff offered "nothing but limited anecdotal hearsay" to support the idea that other nurses were similarly situated. In *Levinson v. Primedia Inc.*, No. 02 Civ. 2222, 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003), the Court denied conditional certification to plaintiffs who alleged a companywide policy but "fail[ed] to support this legal conclusion with a factual showing that extends beyond their own circumstances."  The Court deemed the plaintiffs' statement that "for many guides, and perhaps most guides, myself included, the monthly compensation that was received was often less than the minimum wage" to be insufficient. *Id*. And in *Flores v. Osaka Health Spa, Inc.*, No. 05 Civ. 962, 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ), the court found a Complaint factually insufficient for conditional certification where the plaintiff stated that "it is my understanding that the other massage therapists working my shift did the same" amount of work, without explaining what that understanding was based on. *See also, Mata v. Foodbridge LLC*, 2015 WL 3457293, at *3, 4 (S.D.N.Y. June 1, 2015) (denying conditional certification when plaintiff's "brief declaration" "includes no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions.")

6

### 3.     Andon's affidavit is insufficient

Andon's affidavit provides only allegations that consist of nonspecific personal observations and conversations that do not provide even a "modest factual showing" that he, along with potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 554–55 (quoting *Hoffman*, 982 F.Supp. at 261).

Andon attempts to establish a connection with a proposed class of "superintendents and handymen" employed by Defendants. But his affidavit identifies no handymen at any building nor does it describe any Plaintiffs' affidavits provide no evidence that any of the Plaintiffs were actually employed by Defendants, such as a paystub or W-2 from the Defendants. Andon does not allege that Noey Matos was any of the other superintendents' supervisor.

Moreover, Andon's affidavit states that he spoke *only* with **some** of the nine other current or former superintendents about their pay. He provides no information about the nature of the work they allegedly performed as independent contractors, how they were paid for such work, or any such contracting firms they were allegedly required to form. His affidavit offers no other facts, such as who he spoke to, when or where these conversations took place, or the particulars of the conversation—that would suggest these conversations shed any light on whether the individuals are similarly situated to Andon.

Plaintiffs' motion for conditional certification "cannot be satisfied simply by unsupported assertions." *Myers*, 624 F.3d at 555. Here, all Andon has provided is unsubstantiated assertions that provide no credibility to his claim that there are employees of the Defendants who are similarly situated to the Plaintiffs.

7

### 4. Plaintiff offers no basis for the Court to equitably toll the statute of limitations for opt ins

Plaintiffs have no basis to request equitable tolling. The doctrine of equitable tolling allows a court to extend a statute of limitations "on a case-by-case basis to prevent inequity." *Contrera v. Langer*, 278 F. Supp. 3d 702, 723–25 (S.D.N.Y. 2017) (citing *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir.), cert. denied, 531 U.S. 968, 121 S.Ct. 404, 148 L.Ed.2d 312 (2000)). "Equitable tolling applies as a matter of fairness where a party has been prevented in some **extraordinary way** from exercising his rights." *Id*. (citing *Iavorski v. I.N.S.*, 232 F.3d 124, 129 (2d. Cir. 2000)) (emphasis added).

The Supreme Court has made clear, however, that the conditions for applying the doctrine are strict. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Id. (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); accord *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (noting that the extraordinary circumstance must have "prevented timely filing"); *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010); *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003); *Estate of Mandarino v. Mandarino*, 699 F.Supp.2d 646, 652 (S.D.N.Y. 2010), aff'd, 408 Fed.Appx. 428 (2d Cir. 2011)). The second prong of the equitable tolling test "is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." *Id*. (citing *Menominee Indian Tribe of Wisconsin v. U.S.*, 136 S. Ct. 750 (2016) (emphasis omitted)).

The Second Circuit has repeatedly cautioned that "equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." *Id*. (citing *A.Q.C. ex rel. Castillo v. United State*s, 656 F.3d 135, 144 (2d Cir. 2011) (*Phillips v. Generations Family Health Ctr.*,

723 F.3d 144, 150 (2d Cir. 2013)). It should not be applied where the movant provides no grounds for its application. *Id.* (citing *Mark v. Gawker Media LLC*, 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2004)).

Here, there is no evidence regarding existing or potential opt-in plaintiffs that have been "pursuing [their] rights diligently." *Id*. The equitable tolling inquiry is "a highly factual issue that depends on what and when a plaintiff knew or should have known—an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed." *Alvarado Balderramo v. Taxi Tours Inc.*, 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017). Thus, the Court could not possibly assess whether any potential opt-in plaintiff has diligently pursued his or her rights. "The test for equitable tolling is not concerned with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a plaintiff who is seeking the application of the doctrine."

Cases that hold that "the time period spent by a court deciding a motion for conditional approval may by itself allow for the application of the equitable tolling doctrine" do not conform to the equitable tolling doctrine as described by the Supreme Court and the Second Circuit. *Contrera v. Langer*, 278 F. Supp. 3d 702, 723–25 (S.D.N.Y. 2017); See also, e.g. *Pace*, 544 U.S. at 418), 125 S.Ct. 1807, *Lawrence*, 549 U.S. at 336, 127 S.Ct. 1079).

Here, Plaintiffs do not even attempt to demonstrate that an "extraordinary circumstance" prevented any potential plaintiff from timely filing a claim or that these hypothetical claimants "acted with reasonable diligence." As the Second Circuit has noted, equitable tolling is expected to occur in only "rare" circumstances, *Phillips*, 723 F.3d at 150), and must be considered on a "case-by-case basis," *Warren*, 219 F.3d at 113. See generally *Wallace v. Kato*, 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ("Equitable tolling is a rare remedy to be applied in

9

unusual circumstances, not a cure-all for an entirely common state of affairs"). A court's "discretionary power to facilitate the sending of notice to potential class members is premised on its use as a tool for efficient case management." *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 556 (S.D.N.Y. 2013) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 174 (1989); *Myers*, 624 F.3d at 555 n.10). But sending notice to potential opt-in plaintiffs with obviously time-barred claims and no explanation as to why they may be able to demonstrate equitable tolling in the future fails to serve this purpose. *Contrera v. Langer*, 278 F. Supp. 3d 702, 726–27 (S.D.N.Y. 2017).

**5.    Issues with the proposed class notice**

If the Court decides to grant conditional certification and issue a notice to potential opt-ins, the notice should first be modified to conform to the facts of this case and applicable law.

*Plaintiff is not entitled to Email Addresses at this Stage*

Plaintiff requests the email addresses of the potential opt-ins. Only the names and current or last known addresses of class members shall be provided to the Plaintiff. *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 324 (S.D.N.Y. 2007); see also *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d 545, 564 (S.D.N.Y. 2013). "Such personal information as email addresses and Social Security numbers are none of Plaintiff's business." If, in the future, many of the notice and consent forms are returned as undeliverable, Plaintiff can then make a motion and ask that the Defendants provide him with the email addresses or other identifying information about the potential opt-in members whose Notice was returned.

*The Notice should Contain No references to Handymen*

As set forth above, Andon has not identified any handymen to whom he is allegedly similarly situated. As such, the notice should not include a reference to handymen.

*The Notice should be limited to employees employed three years from date of notice*

The proposed notice indicates that is should be sent to employees whose employment with defendants ended three years from the date this lawsuit was filed, which may be nearly four years from the date of the notice. Apparently, on the theory that might qualify for equitable tolling after they joined the lawsuit. Courts authorizing notice under this logic note that while they will not toll the statute of limitations before providing notice to potential opt-in plaintiffs, they will send out notice to the wider group of employees and permit "challenges to the timeliness of individual plaintiffs' actions ... at a later date." *Contrera v. Langer*, 278 F. Supp. 3d 702, 726–27 (S.D.N.Y. 2017)  (citing *Martin*, 2016 WL 30334, at *16 (quoting *Trinidad*, 962 F.Supp.2d at 564 n.14); accord *Lopez v. JVA Indus., Inc.*, 2015 WL 5052575, at *6 (S.D.N.Y. Aug. 27, 2015); *Guzman*, 117 F.Supp.3d at 528; *She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *6 (S.D.N.Y. Oct. 16, 2014)). Some courts have permitted notice to a wider group of employees simply on the theory that "equitable tolling issues often arise for prospective plaintiffs" in FLSA suits. *Id*.  (citing *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); accord *Gomez v. Terri Vegetarian LLC*, 2017 WL 2628880, at *2 (S.D.N.Y. June 16, 2017); *Alves v. Affiliated Home Care of Putnam, Inc.*, 2017 WL 511836, at *5 (S.D.N.Y. Feb. 8, 2017); *Bittencourt v. Ferrara Bakery & Cafe Inc.,* 310 F.R.D. 106 (S.D.N.Y. 2015); *727 *Fonseca v. Dircksen & Talleyrand Inc*., 2014 WL 1487279, at *4 (S.D.N.Y. Apr. 11, 2014); *Hamadou v. Hess Corp*., 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013)). In other words, these courts do not require any presentation of facts that would show the potential for equitable tolling. Id.

11

Rather, the fact that "equitable tolling issues often arise" in other FLSA actions is sufficient to send notice to the larger group. Id. But to the extent they do so, these cases are inconsistent with Second Circuit case law.

Because plaintiff has not shown a realistic possibility that employees whose employment ended outside the limitations period will be able to demonstrate equitable tolling, notice should be sent only to individuals who were last employed by defendants within three years prior to the date the notices are mailed and the proposed notice should be modified to reflect that fact. *Contrera v. Langer*, 278 F. Supp. 3d 702, 728 (S.D.N.Y. 2017).

### *Defendants Position on lawsuit should be modified*

Defendants' position on the lawsuit (Section 3 of the Proposed Notice) should be modified to reflect that it maintains that its employees were properly paid, going beyond the proposed notice's current statement that they deny failing to pay overtime wages. Section three should be modified to read:

> *The Defendants deny that they violated federal or New York State law. In particular Defendants deny that they failed to pay overtime wages and maintain that their pay practices complied with applicable law.*

### *The Notice does not need to be posted at Defendants' Buildings*

The Court should deny plaintiffs' request to order posting of the proposed notice at defendants' places of business because the only employees who will be reached by such notice will be current employees, who will receive the same notice by mail. A posting of notice in the workplace is not always an effective or even appropriate way to reach similarly situated employees, and that such a posting may have negative effects on the workplace environment. *See, e.g., Michael v. Bloomberg L.P.,* 2015 WL 1810157, at *4 (S.D.N.Y., Apr. 17,

12

2015) (posting of notice in workplace not appropriate "absent a showing that a significant number of notices were returned as undeliverable") (citations omitted). *See Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015).

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' motion in its entirety, grant Defendants' their reasonable attorneys' fees and costs, and award such other and further relief as the Court deems proper and just.

Dated: July 23, 2018
      New York, New York

                        Respectfully submitted,
                        CLIFTON BUDD & DeMARIA, LLP
                        Attorneys for Defendants

By: _____
      Daniel W. Morris
      The Empire State Building
      350 Fifth Avenue 61st Floor
      New York, New York 10118
      (212) 687-7410