# JOSEPH & NORINSBERG, LLC

225 Broadway Suite 2700
New York, NY 10007
Telephone (212) 227-5700
Fax (212) 406-6890
_____
www.employeejustice.com

April 29, 2019

**VIA ECF**
The Honorable Katharine H. Parker, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    ***Andon v. SDG Properties, Inc., et al.,***
                 Docket No. 17-Civ- 7876 (ALC) (KHP)

Dear Judge Parker:

      We represent Plaintiff Rosalino Andon and opt-in Plaintiff Javier Nelson ("Plaintiffs") in the above-referenced employment matter against SDG Properties, Inc., SDG MANAGEMENT CORP., 137 BROADWAY ASSOCIATES, LLC, 138 BROADWAY ASSOCIATES, LLC, 141 BROADWAY ASSOCIATES, LLC, 144 BROADWAY ASSOCIATES, LLC, 156 BROADWAY ASSOCIATES, LLC, STUART D. GOLDSTEIN, EDWARD M. FOX and NOEY MATOS ("Defendants"). We write now, on behalf of all parties, to respectfully seek judicial approval of the Settlement Agreements, attached hereto as Exhibits A-B.[1] Additionally, the parties respectfully request that the executed voluntary dismissal annexed hereto as Exhibit C be "So-Ordered" by the Court.

    **I.**    **PROCEDURAL HISTORY**

      Mr. Andon commenced this action on October 13, 2017, on behalf of himself and all others similarly situated, against the Defendants for unpaid overtime wages and related claims, pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and New York Labor Law ("NYLL"). Subsequently, the parties conducted initial discovery, and then, on June 5, 2018, Plaintiff filed an Amended Complaint. (Dkt No. 38).

      Thereafter, on July 2, 2018, Plaintiff Andon filed a motion to conditionally certify a collective action of similarly situated superintendents and handymen, pursuant to 29 U.S.C. § 216(b). Plaintiff reaffirmed his allegations and offered further details about Defendants' class-wide policies in his supporting affirmation. (Dkt No. 46).

---

[1] Counsel for Defendants has represented that fully executed copies of the Settlements Agreements will be submitted by May 1, 2019.

The Hon. Katharine H. Parker, U.S.M.J.
April 29, 2019
Page 2

On August 20, 2018, the Court issued an Order granting in part and denying in part Plaintiff's motion for conditional certification. (Dkt No. 57). Thereafter, in compliance with the Court's order, the Defendants provided Plaintiff's counsel with a class list for the FLSA statutory period, which listed approximately 28 class members. A class opt-in period followed, which concluded on October 31, 2018. Nelson Javier opted into the class. (Dkt No. 70).

On March 8, 2019, the parties participated in a private mediation with JAMS mediator, the Hon. Allen Hurkin-Torres. The parties negotiated in good faith for several hours, and through the assistance of the mediator, the parties reached an agreement in principle. The Term Sheet is annexed hereto as Exhibit D. The Plaintiffs' complete settlement agreements are annexed heretoas Exhibits A-B.

## II. PLAINTIFFS' CLAIMS & FACTUAL ALLEGATIONS

### A. Rosalino Andon

Plaintiff was employed as a superintendent and handyman from 2003 until on or about August 2017. (Andon Decl. ¶ 2 [Dkt. No. 49]). Mr. Andon routinely worked 65 to 70 hours per week. (Id. ¶ 8). Nonetheless, he was paid a flat rate every week regardless of how many hours he actually worked. Specifically, during the federal statutory period, Mr. Andon was paid either $600.00 or $800.00 on a bi-weekly basis. (Id. ¶¶ 5-7). Plaintiff alleged he was never told know why his compensation varied; it seemed to him to be arbitrary.

Andon alleged that as a condition of his employment, Plaintiff was required to form an independent corporation, so that he could invoice additional work, called "side jobs." (Id. ¶ 9). Plaintiff's maintains that his independent corporation was anything but independent. *First,* he alleged that Defendants told him unequivocally that he could not offer services to any companies apart from the ones they designated. (Id. ¶ 10). He also allegeds that Defendants directed Plaintiff not to state a price for his services, and instead paid him whatever price they desired – typically far below market value. (Id. ¶ 11). Defendants directed Plaintiff not to record the number of hours he worked per job on the invoices. (Id.). Thus, there was no record of the total hours Plaintiff Andon worked per week, and Plaintiff could work more than forty hours in a week without a record of it. .

As a result, Mr. Andon sought damages for unpaid overtime wages at the mandatory statutory rate, under the FLSA and NYLL.

### B. Javier Nelson

Javier Nelson worked as a superintendent at a building located at 600 w. 150th street, New York, NY 10031. The building had 46 units, and Plaintiff Nelson lived in the basement. Like Mr. Andon, Nelson alleges he worked exceptionally long hours, approximately, 70 hours per week, and was paid a flat rate every week, independent of how many hours he actually worked. And like Mr. Andon, he claims that he was required to form an "independent contractor" corporation as a

The Hon. Katharine H. Parker, U.S.M.J.
April 29, 2019
Page 3

condition of his employment and was routinely denied compensation for his overtime hours at the mandatory statutory rate as a result. Mr. Nelson sought damages for unpaid overtime wages at the mandatory statutory rate, under the FLSA and NYLL.

## THE SETTLEMENT AGREEMENT

Subject to the Court's approval, the Settlement Agreement reached by the parties obligates the Defendants to pay Plaintiffs an amount of One Hundred, Sixty Thousand Dollars and zero cents ($160,000.00) to resolve the case. (See Exhibits A-B at ¶¶ 1.7, 2).

As per the terms of the Settlement Agreement, after attorneys' fees and expenses, Plaintiff Rosalino Andon will receive $69,281.68 of the total settlement amount, to be paid in two settlement checks, within 30 days of Court approval the subject Settlement Agreement. (Exhibit A at ¶ 2.2). Likeise, Opt-In Plaintiff Javier Nelson will receive $35,690.57 of the total settlement amount, to be paid in two settlement checks, within 30 days of Court approval of the subject Settlement Agreement. (Exhibit B at ¶ 2.2).

In exchange for the settlement payments and the confession of judgment, the Plaintiffs will release all claims against the Defendants and Defendants release all claims against the Plaintiffs The Settlement Agreement also contains a mutual non-disparagement provision, with a carve-out that will allow the parties to make truthful statements concerning their experience litigating this action. (Exhibits A-B at ¶¶ 9-10).

## COSTS AND ATTORNEY'S FEES

The settlement agreement provides for attorneys' fees in the amount of 0.33% of the settlement amount, after costs, which equals Fifty-One Thousand, Seven Hundred and Two Dollars, and Seventy-Four cents, ($51,702.74), and for costs in the sum of Three Thousand, Thre Hundred and Twenty-Five Dollars ans zero cents ($3,325.00). (See Exhibits A-B at ¶¶ 1.8, 2.1). A disbursement log showing Plaintiffs' costs in this action is annexed hereto as Exhibit E.[2] In total, the above-referenced attorneys' fees and costs amounts to Fifty-Five Thousand, and Twenty Seven Dollars and Seventy-Four cents. ($55,027.74).

Since the filing of the case in October 13, 2017, Plaintiffs' counsel has used its considerable experience in litigating wage and hour cases to obtain a very good result for Plaintiffs.

Plaintiffs' counsel has worked without compensation of any kind to date, and our fee has been wholly contingent upon the result achieved. Under such circumstances, Courts routinely award attorneys' fees equaling one-third of the settlement amount. See e.g., Howard v. Don Coleman Advertising Inc., 2017 WL 773695, at *2 (S.D.N.Y., 2017) (Cott, J.) (approving attorneys' fees of one-third of the settlement amount, plus costs); Williams v. Magic Management, LLC, 2017 WL 4861990, at *3 (S.D.N.Y., 2017) (same); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept 19, 2013)

---

[2] The disbusrment log is dated April 2019; however, Plaintiffs are only seeking the costs incurred up until the date of the mediation which was March 8, 2019.

The Hon. Katharine H. Parker, U.S.M.J.
April 29, 2019
Page 4

(approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiffs' retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit").

## **THE SETTLEMENT IS FAIR AND REASONABLE**

The parties' agreement must be "fair and reasonable." Flores v. Food Express Rego Park, Inc., No. 15-CV-1410 (KAM)(SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016) (citing Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). Generally, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." In re Penthouse Executive Club Compensation Litig., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether to approve a settlement agreement, the ultimate question is "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Wolinsky, 900 F. Supp. 2d at 335.

Here, there is no question that the Settlement Agreement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over the course of several months, and then further negotiations at a private mediation. The parties are represented by counsel highly experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. In fact, the parties settled this case only with the assistance of a highly experienced mediator at a Court-ordered mediation. Thus, this settlement is utterly devoid of any fraud or collusion.

The proposed Settlement Agreement resolves *bona fide* disputes and reflects a reasonable compromise over sharply contested issues that led the parties to resolve this matter. Had the matter proceeded to summary judgment and/or trial, Defendants risked being exposed to greater damages, as Plaintiffs might have proceeded to file a motion for class certification.

Plaintiffs, however, also faced considerable risks in proceeding forward with the litigation, as Defendants may have demonstrated that Plaintiffs reasonable recopllections of hours worked were inaccurate. Defendants would have produced detailed video surveillance which would have shown the precise hours worked by each Plaintiff. Thus, for both parties, continuing through trial would be costly and would further defer closure in this litigation. Therefore, the settlement represents a reasonable compromise of the disputes in this matter. The settlement eliminates these risks and ensures that Plaintiffs will receive fair and reasonable compensation in this matter.

In sum, based on the litigation and collection risks discussed above, the settlement is advantageous to all parties and will enable the parties to avoid the burdens and expenses of ongoing litigation.

The Hon. Katharine H. Parker, U.S.M.J.
April 29, 2019
Page 5

## **CONCLUSION**

For the reasons set forth above, the parties respectfully request that the Court approve the settlement as fair and reasonable. Additionally, the parties respectfully request that the executed voluntary dismissal annexed hereto as Exhibit C be "So-Ordered" by the Court.

We thank the Court for its consideration of this request.

Respectfully Submitted,

JOSEPH AND NORINSBERG, LLC

By: _____
Chaya M. Gourarie, Esq.