# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between SDG Management Corp., and Rosalino Andon ("Andon").

## RECITALS AND BACKGROUND

WHEREAS, Andon filed a Collective and Class Action Complaint, in which claims were asserted against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law ("NYLL") for the alleged failure to pay certain wages to Andon and other employees who are allegedly similarly situated;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between Andon and Defendants, including, claims asserted in the United States District Court, Southern District of New York (the "Court") with Civil Action #: 17 CV 07876 (the "Federal Action"):

WHEREAS, the Defendants in the Federal Action deny all of the allegations made by Plaintiffs in the Federal Action, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Federal Action;

WHEREAS, the Parties have engaged in substantial discovery, including but not limited to reviewing hundreds of documents exchanged by the Parties, analyzing personnel documents including wage, compensation, and payroll records;

WHEREAS, the Parties participated in a private mediation with Mediator Hon. Allen Hurkin-Torres on March 8, 2019, which assisted the Parties in arriving at the instant settlement;

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that wages, overtime and/or other amounts were improperly withheld from any employees, Defendants have agreed to settle the Federal Action on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Federal Action;

WHEREAS, Plaintiff's Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Federal Action, and the impact of this Agreement on Andon and based upon Plaintiff's counsels' analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Federal Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this

1

Agreement is in the best interest of Plaintiff;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Federal Action on the following terms and conditions:

1. **Definitions.**

    1.1   For purposes of this Agreement, "Andon" includes, but is not limited to, Rosalino Andon, and all affiliated persons or entities, including, but not limited to, his present or former domestic partner, spouse, dependents, heirs, assigns, successors, creditors, debtors, counsel and any otherwise affiliated or related persons and entities.

    1.2   For purposes of this Agreement, "Defendants" means SDG Properties, Inc., SDG Management Corp., 137 Broadway Associates, LLC, 138 Broadway Associates, LLC, 141 Broadway Associates, LLC, 144 Broadway Associates, LLC, 156 Broadway Associates, LLC, Stuart D. Goldstein, Edward M. Fox, and Noey Matos, and the aforementioned entities' and individuals' divisions, affiliates, subsidiaries, parents, corporations under common ownership or control or related business entities, predecessors, successors, management companies, leasing and payroll companies, assigns, officers, directors, members, partners, trustees, employees, agents, actuaries, accountants, stockholders, administrators, representatives, attorneys including without limitation attorneys who appeared in this action, insurers or fiduciaries, past, present or future.

    1.3   For purposes of this Agreement, "Parties" means Andon and SDG Management Corp.

    1.4   "Effective Date" of the settlement shall mean the last of the following dates: (a) the date 30 days after the entry of an order by the District Court granting final approval of the Settlement, if there are no appeals; or (b) if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval.

    1.5   "Andon Released Claims" means all claims, suits, debts, dues, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, complaints, cross claims, counterclaims, damages, sums of money, interest, attorneys' fees and costs, or causes of action of any kind or nature whatsoever, known or unknown, made or which could have been made, suspected or unsuspected, fixed and contingent, at law or in equity, which Andon has against Defendants, or may

have had against Defendants prior to the date of the execution of this Agreement, or which he or his heirs, executors, administrators, agents and assigns, shall or may have for, upon, or by reason of any matter, cause or thing whatsoever based on, arising out of, resulting from, or in any way connected, directly or indirectly with Andon's employment with or dismissal from Defendants, expressly including, but not limited to, the Fair Labor Standards Act, New York State Human Rights Law, New York City Human Rights Law, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Civil Rights Acts of 1866, 1871, and 1991, the Americans With Disabilities Act, Genetic Information Nondiscrimination Act of 2008, the Family and Medical Leave Act, New York State Labor Law, New York City Labor Law, New York Executive Law, New York City Administrative Code, New York City Earned Safe and Sick Time Act, and any and all other federal, state or local laws, common law, torts, contracts, rules, statutes, regulations, constitutions, ordinances or public policies, whether known or unknown interest on such claims, and attorneys' fees and costs related to such claims through the date of this Agreement. Andon Released Claims includes any and all claims asserted or which could have been asserted in the Federal Action as of the date of execution of this Agreement. Andon Released Claims does not include (a) Andon's rights under this Agreement, (b) Claims arising after the date Andon signs this Agreement, and (c) any Claims that by law may not be waived or released under applicable law, including any Workers' Compensation claim(s).

1.6 "Defendants' Released Claims" means all claims, suits, debts, dues, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, complaints, cross claims, counterclaims, damages, sums of money, interest, attorneys' fees and costs, or causes of action of any kind or nature whatsoever, known or unknown, made or which could have been made, suspected or unsuspected, fixed and contingent, at law or in equity, which Defendants have against Andon, or may have had against him prior to the date of the execution of this Agreement. Defendants' Released Claims does not include (a) Defendants' rights under this Agreement, (b) Claims arising after the date Defendant signs this Agreement, and (c) any Claims that by law may not be waived or released under applicable law.

1.7 "Total Settlement Sum" means the $160,000 that Defendants agreed to pay Nelson Javier and Andon to settle their claims as set forth in their respective agreements.

1.8 "Total Attorneys Fees and Costs" means the $55,027.74 in fees and costs that Andon's

attorneys incurred in bringing the Federal Action and recovering the Total Settlement Sum.

2. **Consideration.** In consideration for Andon's signing and complying with this Agreement and the releases of all claims herein, Defendants agree to pay Andon, or have paid on its behalf, $96,795.55 ("Andon Settlement Sum"), which is a portion of the total settlement sum of $160,000.00 ("Total Settlement Sum") in this action, to be apportioned as followed

    2.1   A check made payable to "Joseph & Norinsberg, LLC" in the amount of $27,513.87, representing 50% of the Total Attorney's Fees and Costs in this action, calculated from the Total Settlement Sum;

    2.2   A settlement of $69,281.68 made out to Andon, to be remitted in two checks:

- A check made payable to Andon in the amount of $34,640.84 for which Defendants will issue an IRS form 1099.

- A check made payable to Andon in the amount of $34,640.84, less all applicable withholdings and for which Defendants will issue an IRS form W2.

    2.2   The Andon Settlement Sum shall be sent by overnight delivery to the office of Andon's counsel, Chaya Gourarie, Esq., Joseph & Norinsberg, LLC, 225 Broadway Suite 2700, New York, N.Y. 10007 within 30 days of the Effective Date of this Settlement Agreement.

    2.3   Andon and his counsel agree that they will be solely responsible for the payment of any applicable taxes owed by them, if any, in regard to the aforementioned payment. That, in the event a governmental authority or agency causes Defendants to incur any expense because of either Andon or his counsel's failure to pay taxes, if any, in connection with this settlement, Andon and his counsel agree to indemnify and hold harmless Defendants for such failure to pay their taxes. If Defendants receive any notice of tax disputes from a governmental authority, they shall forward it to Andon's counsel.

3. **No Consideration Absent Execution of This Agreement.** Andon understands and agrees he would not receive the monies and/or benefits specified in Paragraph 2 above, except for his execution of this Agreement and the discontinuance of the Federal Action with prejudice.

4. **Release of Claims.** In return for the payments identified in paragraph 2, Andon knowingly and voluntarily releases and forever discharges Defendants from the Andon Released Claims. In return for the consideration contained in this Agreement, Defendants knowingly and

voluntarily release and forever discharge Andon from the Defendants' Released Claims.

5. **Acknowledgments and Affirmations.** Andon affirms that in the Federal Action he has asserted a claim seeking unpaid wages and overtime pay under the Fair Labor Standards Act, the New York State Labor Law, and/or any other law, regulation or basis and affirms that there is a bona fide dispute as to such FLSA claims which are being settled and released by this Agreement.

6. **Release Notification. Defendants advised and advise Andon to discuss the terms of this Agreement and release of claims with his legal counsel.** Andon acknowledges he did so; it is his choice to waive any potential claims in return for the benefits set forth herein; and, said choice was made after careful thought, and after consulting with his attorneys. Andon represents that he has been advised to and did consult legal counsel regarding this Agreement. Andon further represents that after having had a full opportunity to review and consider the terms and conditions of this Agreement and having discussed them with any member of their immediate family, counsel or financial advisor of his own choosing, and having had sufficient time to review and consider this Agreement, Andon fully understands all of the provisions of this Agreement and has executed same freely and voluntarily.

7. **Dismissal of the Federal Action.** Counsel for Andon will take all steps necessary to have the Court approve the dismissal of the Federal Action, including executing and submitting the Stipulation of Discontinuance with Prejudice attached as Exhibit A and whatever documentation is required to have this Settlement Agreement approved pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The Parties shall execute and submit all documents and information required to terminate such proceedings and use their best efforts to have this Settlement Agreement approved by the Court and the Federal Action dismissed. If the Court does not approve the Settlement Agreement and dismiss the Federal Action, this Agreement shall be void ab initio and the Parties shall use their best efforts to reach a revised agreement acceptable to the Court.

8. In consideration of Defendants' undertakings contained in this Agreement, Andon agrees that he and his agents, family and/or representatives shall refrain from: (1) all conduct, verbal or otherwise, which would materially damage the reputation, goodwill or standing in the community of Defendants, and (2) referring to or in any way commenting on Defendants in or through the general media or any public domain (including without limitation, internet websites, blogs, chat rooms and the like), in a way that would materially damage, the reputation, goodwill or standing in the community of Defendants. The aforesaid limitations shall not apply to any response to any inquiry by any government, administrative or regulatory body, commission or agency.

9. **Mutual Non-Disparagement:** Andon agrees that he shall not make any statement, written,

oral or electronic, which in any way disparages Defendants, or Defendants' business practices. However, this Paragraph shall not be interpreted to prevent Plaintiff from making truthful statements concerning their experience litigating this Action. Noey Matos agrees that he will not make any statement, written, oral, or electronic which in any way disparages Andon.

10. **Neutral Reference:** Andon and Defendants agree that if Defendants are contacted by any current or prospective employer of Andon requesting information about his employment with Defendants, this inquiry will be forwarded to an individual designated by Defendants, and this individual will respond by providing a neutral reference setting forth only the dates of Andon's employment, setting forth the amount of Andon's rate of pay, and confirming his last position held.

11. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the State of New York without regard to its conflict or choice of law provisions. In the event Andon or Defendants breach any provision of this Agreement, Andon and Defendants affirm that either may institute an action to specifically enforce any term or terms of this Agreement. If any provision of this Agreement is declared illegal or unenforceable by any court of competent jurisdiction, the parties agree the court shall have the authority to modify, alter or change the provision(s) in question to make the Agreement legal and enforceable. If this Agreement cannot be modified to be enforceable, excluding the release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. If the release language is found to be illegal or unenforceable, Andon and Defendants agree to execute a binding replacement release(s).

12. **Amendment.** Except as provided in Paragraph 9 above, this Agreement may not be modified, altered or changed without the express written consent of both parties wherein specific reference is made to this Agreement.

13. **Non-admission of Wrongdoing.** The parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by either party of any liability or unlawful conduct of any kind.

14. **Entire Agreement.** This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any prior agreements or understandings between the parties. Andon acknowledges he has not relied on any representations, promises, or agreements of any kind made to him in connection with his decision to accept this Agreement, except for those set forth in this Agreement, and Andon's consent to this Agreement is given freely, voluntarily, and with full knowledge and understanding of this Agreements contents.

15. **Section Headings.** Section headings are used herein for convenience of reference only and shall not affect the meaning of any provision of this Agreement.

16. **Legal Fees.** Except as provided for in this Agreement, each party will be responsible for its own legal fees or costs, if any, incurred in connection with the negotiation, settlement and delivery of this Agreement.

17. **Joint Participation in Preparation of Agreement.** The Parties participated jointly in the negotiation and preparation of this Agreement, and each party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any party or in favor of any party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one party and in favor of the other.

18. **Miscellaneous.**

    16.1 All notices or other communication provided for or permitted herein, shall be in writing, and mailed by U.S. Registered or Certified Mail/Return Receipt Requested, reputable overnight express courier (Fed Ex, UPS, etc.), provided that, if such communication is used, the notice is also mailed simultaneously by First-Class U.S. Mail, to the party entitled or required to receive same, at the address set forth below or at such other address as such party shall designate by a notice given pursuant to this paragraph. All such notices, etc., shall be deemed given when mailed in accordance with this paragraph.

    **If to Andon:**
    Chaya Gourarie, Esq.
    Joseph & Norinsberg, LLC
    225 Broadway Suite 2700
    New York, N.Y. 10007

    **If to Defendants:**
    Daniel Morris, Esq.
    Clifton Budd & DeMaria, LLP
    The Empire State Building
    350 Fifth Avenue, 61st Floor
    New York, NY 10118

    16.2 This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument, and in pleading or proving any provision of this Agreement, it shall not be necessary

to produce more than one of such counterparts. Facsimile and or PDF transmission copies will be deemed and accepted as original in all proceedings and no objection will be raised regarding same. The exhibits annexed hereto are specifically incorporated and made a part of this Agreement.

16.3 This Agreement shall inure to the benefit of Defendants, their successors and assigns, including, but not limited to, any corporation, individual, partnership or other entity which may acquire all or substantially all of Defendants' assets and business or with or into which Defendants may be consolidated or merged. This Agreement and its attached exhibits shall inure to the benefit of Andon and his executors and assigns.

16.4 Each of the covenants contained herein is a separate and independent covenant. A breach, finding of unenforceability or waiver of any one covenant herein (or of any other covenant or agreement between these parties) shall not relieve either party of any remaining obligations hereunder.

19. **Competency to Waive Claims.** At the time of considering or executing this Agreement, Andon was not affected or impaired by illness, use of alcohol, drugs or other substances or otherwise impaired. Andon is competent to execute this Agreement and knowingly and voluntarily waives any and all claims he may have against Defendants.

20. By signing this Agreement, Andon acknowledges that:

   18.1 He has read it;

   18.2 He understands it and knows that he is giving up important rights, including but not limited to, rights under common law and other constitutional, statutory or common law rights and privileges;

   18.3 He understands that this Agreement waives claims arising under The Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621, *et seq.*,

   18.4 He had adequate opportunity to request and has received, all information he needs to understand this Agreement and has been offered sufficient time, that is, at least 21 calendar days, to consider whether to sign this Agreement;

   18.5 Andon negotiated this Agreement through counsel with knowledge and express consent;

   18.6 Andon has signed this Agreement knowingly and voluntarily, without any duress, coercion, or undue influence by anyone;

8

18.7  Andon has reviewed each and every provision of this Agreement in a translated copy written in his native language or had it translated to his native language.

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement and Release as of the date set forth below:

ROSALINO ANDON

By: _____

Date: April 19, 2019

SDG MANAGEMENT CORP

By: _____

Print Name _____

Title _____

Date: _____

9

18.7 Andon has reviewed each and every provision of this Agreement in a translated copy written in his native language or had it translated to his native language.

IN WITNESS WHEREOF, the parties hereto knowingly and voluntarily executed this Agreement and Release as of the date set forth below:

ROSALINO ANDON

By: _____

Date: April 19, 2019

SDG MANAGEMENT CORP

By: _____

Print Name: Davin S. Goldstein

Title: CEO

Date: 5/1/19

9